UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOVEREIGN BANK, : | |
|     Plaintiff, : | |
|     v. : | 08cv1600 (WWE) |
| : | |
| ACG II, LLC, ACORN CAPITAL : | |
| GROUP, LLC, MARLON QUAN, : | |
| STEWARDSHIP INVESTMENT : | |
| ADVISORS, LLC, : | |
|     Defendants. : | |

### **MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

In this action, plaintiff Sovereign Bank seeks injunctive relief and monetary damages against defendant Marlon Quan and the several entities that he allegedly owns, controls or operates, ACG II, LLC, Acorn Capital Group, LLC, and Stewardship Investment Advisors, LLC ("Stewardship"). Specifically, plaintiff alleges claims of breach of contract and breach of duty of good faith and fair dealing against ACG II and Acorn (counts one through three), negligence against Acorn and Quan (count four), negligent misrepresentation against ACG II, Acorn and Quan (count five), fraudulent misrepresentation against ACG II, Acorn and Quan (count six), fraudulent nondisclosure against ACG II, Acorn and Quan (count seven), piercing the corporate veil against Acorn, Quan, and Stewardship (counts eight through ten), violation of the Uniform Fraudulent Transfer Act against Acorn (count eleven) and violation of the Connecticut Unfair Trade Practices Act against all defendants (count twelve). Defendants have filed motions to dismiss counts three through twelve. For the following reasons, the motions to dismiss will be granted in part and denied in part.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true.

Plaintiff is a federally-chartered savings bank. Defendant Acorn, a Delaware limited liability company, was established to provide short-term financing options for businesses that are unable to obtain financing from traditional sources for purchase order and asset-based loans. Defendant ACG II is Delaware limited liability company that is a wholly-owned special purpose vehicle ("SPV") of Acorn. Defendant Stewardship is a Delaware limited liability company that controls Stewardship Fund and Livingston Acres, both Delaware limited liability companies.

Defendant Marlon Quan is principal owner and CEO of Acorn, and the founder, sole owner and managing member of Stewardship. He is an investment manager with more than 18 years of experience in investment banking.

Sovereign issued loans to ACG II through a line of credit of $22.5 million dollars. Acorn guaranteed ACG II's performance of its obligations to make payments of interest on the loans in accordance with the loan agreement. However, the Guaranty Agreement executed by Acorn contained a subordination provision that carved out and prioritized Acorn's obligations to Livingston, as transferee of Stewardship Fund's rights and obligations under Stewardship Fund's loan to Acorn.

Acorn lent ACG's money from Sovereign to PAC Funding, LLC, which is a financing arm of Petters Company, Inc ("PCI"). The principal of PCI, Thomas Petters, is currently under federal indictment and imprisoned in connection with an alleged multi-

billion dollar scheme to defraud investors. Acorn had failed to verify the collateral for the loans.

From February through August 2008, PAC defaulted several times on the loans from ACG II. Neither Quan nor Acorn disclosed the defaults to Sovereign. Despite his knowledge of PAC's defaults, Quan made representations to Sovereign about the high quality of PAC's management and the collateral comprising the Underlying Collateral. Shortly thereafter, Quan entered into a post-default forbearance agreement effective February 29, 2008.

In March 2008, Quan "discounted heavily" for underwriting purposes the value of the underlying collateral that secured the loans. Neither Quan nor Acorn disclosed to Sovereign that the underlying collateral had been internally devalued.

In May 2008, Acorn and PAC entered into an amendment to the loan agreement between them, which materially disadvantaged Sovereign and benefitted other entities owned and controlled by Quan. Pursuant to this amendment, a pool of collateral was created with payments made to certain notes ("Scheduled Notes"), which were held by Stewardship and Structural Alpha Select SPV. New notes ("New Notes") were issued to replace the cancelled prior notes owed to ACG II with revised principal amounts and payment terms. Interest and principal were required to be paid on the Scheduled Notes before any payments could be made to ACG II on the New Notes. Additionally, certain of the Scheduled Notes that had been previously held by ACG II were transferred by Acorn to Stewardship Fund.

ACG II defaulted on its obligations to pay interest on September 30, 2008. In October 2008, Sovereign sent ACG II a demand letter notifying it of its default.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing (Count three)</u>

Defendants argue that plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because plaintiff has not sufficiently alleged the element of bad faith.

"A duty of good faith and fair dealing is implied in every contractual relationship and it requires that neither party do anything to injure the other's right to receive the benefits of the contract." Landry v. Spitz, 102 Conn. App. 34, 46 (2007). A breach of the implied covenant of good faith and fair dealing occurs where the injurious actions were the product of bad faith. Bepko v. St. Paul Fire and Marine Ins. Co., 2005 WL 3619253 *2 (D. Conn. 2005). In the context of a breach of the covenant of good faith and fair dealing, bad faith involves a dishonest purpose. Barber v. Jacobs, 58 Conn.

App. 330, 338 (2000).  "Bad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties."  Buckman v. People Express, Inc., 205 Conn. 166, 171 (1987).

Here, plaintiff alleges that defendants failed to conduct adequate due diligence of PAC, failed to disclose defaults and internal devaluation to Sovereign, represented PAC quality management despite knowledge of its defaults, and transferred certain assets of value to other entities owned or controlled by Quan to Sovereign's disadvantage.  The Court will leave plaintiff to its proof as to this element and will deny the motion to dismiss as to count three.

Negligence against Acorn and Quan (Count four)

Defendants assert that plaintiff has failed to state a claim of negligence.  The Court must consider whether either Acorn or Quan owed a duty of care to plaintiff to support the claims of negligence.

The existence of a duty is a question of law.  Gaz v. Stamford, 255 Conn. 245, 250 (2001).   The first essential element of a negligence cause of action is the existence of a duty of care owed by a defendant.  Ryan Transportation, Inc. v. M & G Associates, 266 Conn. 520, 525-26 (2003).  The test for determining legal duty is a two pronged analysis that includes: (1) a determination of foreseeability, and (2) public policy analysis.  Monk v. Temple George Assocs., LLC, 273 Conn. 108 (2005).  A duty may be imposed where an ordinary person, knowing what that person knew or should have known, would have foreseen that a harm of the general nature of that suffered would be likely to result.  Seguro v. Cummiskey, 82 Conn. App. 186, 191 (2004).

5

Further, it is a "recognized principle of Connecticut law that one who gratuitously undertakes an act will be liable for performing it negligently." Coville v. Liberty Mutual Ins. Co., 57 Conn. App. 275, 281 (2000).

In the complaint, plaintiff alleges that Quan and Acorn assumed a duty to plaintiff, separate from that imposed contractually, stemming from Quan's assurances to Sovereign as to PAC's management and the collateral securing the loan.  In its brief, plaintiff asserts that Acorn knew of plaintiff's "oblivious" reliance on Quan's assurances yet transferred assets to related entities, thereby impairing the collateral and rendering Quan's representations less accurate and reliable.  Plaintiff maintains that this omission gives rise to a duty in negligence because defendant Acorn should have realized that such conduct involves an unreasonable risk of harm.  However, this case involves sophisticated parties on both sides of the transaction.  It is not so foreseeable that plaintiff's alleged "oblivious" reliance on the assurances would result in the economic harm that occurred so that a duty in negligence should be imposed.  Thus, it follows that no public policy justification underlies the imposition of a duty.

Similarly, the Court cannot find that the complaint alleges a duty owed by Quan to plaintiff.  Plaintiff asserts that Quan voluntarily assumed a duty to act in accordance with assurances to plaintiff.  However, verbal representations as to the quality of a certain company and collateral does not amount to undertaking an act that gives rise to imposition of a duty.  Here, the complaint does not allege that Quan agreed to perform any act but only that he made representations that may have been false at the time.  Accordingly, the Court agrees with defendants that the negligence claim of count four should be dismissed.

6

Negligent and Fraudulent Misrepresentation Claims Against Acorn and Quan (Counts five, six and seven)[1]

Defendants maintain that plaintiff has failed to plead its claims of negligent and fraudulent misrepresentation and non-disclosure with particularity as required by Federal Rule of Civil Procedure 9(b).

Negligent misrepresentation occurs where the declarant, in the course of his or her business, profession or employment provides false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused by justifiable reliance upon the information, if he or she fails to exercise reasonable care or competence in obtaining or communicating the information, and has the means of knowing, ought to know, or has the duty of knowing the truth. Burnham v. Karl and Gelb, P.C., 50 Conn. App. 385, 390 (1998).

For a claim of fraudulent misrepresentation, a plaintiff must allege (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury. Solano v. Calegari, 108 Conn. App. 731, 741, cert. denied, 291 Conn. 943 (2008). Fraudulent nondisclosure requires a failure to disclose known facts, a duty to disclose, and an intent or expectation by the declarant that the nondisclosure will "cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." Wedig v. Brinster, 1 Conn. App. 123, 131 (1983). The

---

[1] Plaintiff concedes that these counts should be dismissed as to ACG II.

7

parties agree that rule 9(b) applies to all these claims, which depend upon the same factual predicate that Quan made certain alleged false representations or failed to disclose certain facts concerning the collateral underlying the loans.[2]  Defendants complain that plaintiff has failed to identify any allegedly fraudulent statements or fraudulent intent to support its claims.

In order to satisfy rule 9(b), a complaint must: (1) specify the statements that the plaintiff contents were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999).  Plaintiff may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent.  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  An inference of fraudulent intent may be demonstrated by alleging facts that show that defendants had the motive and opportunity to commit fraud or by alleging facts that constitute "strong circumstances of conscious misbehavior or recklessness."  The purpose of the specificity requirement is: (1) to ensure that a complaint provides defendant with fair notice of the claim; (2) to safeguard a party's reputation from improvident charges; and (3) to protect against a strike suit.  O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

In paragraph 40 of the complaint, plaintiff alleges:

Sovereign personnel met with representatives of Acorn, including Quan, on

---

[2] There is a split in this district concerning application of rule 9(b) to claims of negligent misrepresentation.  See IM Partners v. Debit Direct LTD., 394 F. Supp. 2d 503, 521 n.12 (D. Conn. 2005).  The Court will apply rule 9(b) in light of the parties' agreement that it applies to the claim of negligent misrepresentation.

> February 14, 2008.  Notwithstanding the pre-existing defaults, Quan emphasized the strength and track record of Acorn's loan portfolio.  Quan made numerous representations about the high quality of PAC's management and the collateral comprising the Underlying Collateral.  This was only two weeks prior to the Acorn's entry into a certain post-default forbearance agreement effective as of February 29, 2008 (the "Forbearance Agreement") with PAC.  Upon information and belief, at least some of the failures to pay on matured notes, which gave rise to the Forbearance Agreement, had already occurred by February 14, 2008.  Neither Acorn nor Quan disclosed such defaults during the February 14 meeting.

In paragraph 41, the complaint states that within weeks of that meeting, Quan had "discounted heavily" the underlying collateral.  Here, Sovereign has identified the speaker and when and where the alleged statements occurred.  Plaintiff has not included exact quotations of the alleged statements but has provided information regarding the subject of the statements.  Despite defendants' argument to the contrary, the allegations also give rise to a strong inference of fraudulent intent by asserting that Quan knew that some of loans were already in default and that the collateral underlying the loans was not actually as secure as represented.  According to the subsequent allegations, it appears that Quan acted to prevent plaintiff from refusing to extend further credit or take any protective measures that would have barred action or agreements that benefitted Quan and his related entities.   Accordingly, the allegations establish inferences of both fraudulent intent and circumstances of conscious misbehavior or recklessness.  Lerner v. Fleet Bank, N.A., 459 F.3d  273, 290 (2d Cir. 2006).  The complaint provides fair and sufficient notice to satisfy Federal Rule of Civil Procedure 9(b).  The motion to dismiss will be denied on this ground.

However, plaintiff's allegations fail to establish that defendants had a duty to disclose, which is required for the claims of negligent misrepresentation and fraudulent

non-disclosure to the extent that such claims rely upon an omission.  Lentini v. Fidelity Nat. Title Ins. Co. of New York, 479 F. Supp. 2d 292, 299 n.3 (D. Conn. 2007). Accordingly, the negligent misrepresentation and fraudulent non-disclosure claims (counts five and seven) will be dismissed with leave to amend.  The motion to dismiss will be denied as to the fraudulent misrepresentation claim (count six).

Piercing the Corporate Veil Against Acorn, Quan and Stewardship (Counts eight, nine and ten)

Defendants maintain that plaintiff has not adequately pleaded the elements required to sustain its veil piercing claims under Delaware law.

In exercising diversity jurisdiction, the Court must look to the substantive law of Connecticut to determine the choice of law.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).   The Connecticut Supreme Court has held that "when a limited liability company is incorporated in another state, our statutes mandate application of the laws of that foreign state."  Weber v. U.S. Sterling Securities, Inc., 282 Conn. 722, 823 (2007).  Since the limited liability companies at issue are all incorporated in Delaware, Delaware state law must apply.

Acorn asserts that plaintiff has failed to allege the requisite facts to pierce the corporate veil:  (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present. See Trevino v. Merscorp, Inc., 583 F. Supp. 2d. 521, 528 (D. Del. 2008).   The following factors determine whether a single economic entity exists: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the

dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.  Id.  Trevino explains that no single factor justifies a decision to disregard the corporate entity, but some combination of the above is required, along with the overall element of injustice or unfairness.  To justify veil piercing, Delaware law requires that the element of injustice or unfairness must stem from the defendants' use of the corporate form in that the corporation existed for no other purpose than as a vehicle for fraud or similar injustice.  In re Foxmeyer Corp., 290 B.R. 229, 236 (D. Del. Bankr. 2003); Outokumpu Eng'g Enter. Inc. v. Kvaerner EnviroPower, Inc., 685 A.2d 724, 729 (Del. 1996).   The alleged torts of the corporation cannot serve as the basis of the requisite injustice.  Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 268 (D. Del. 1989).

Defendants argue that plaintiff's allegations establish neither the single economic entity nor the injustice prong.  Even assuming that single economic entity requirement is met, plaintiff's allegations fail to establish that the corporation existed for no other purpose than as a vehicle for fraud.  The complaint alleges that Acorn created ACG II to serve as an SPV to pool short-term purchase order loans to third parties and that it was used to borrow money from plaintiff.   There are no allegations that any of the corporate entities were created as a sham for a fraudulent purpose.  Additionally, the alleged fraudulent or unfair conduct at issue is limited to the bases of the torts and contractual claims underlying the complaint.  The allegations do not otherwise establish that an abuse of the corporate form occurred giving rise to fraud or some other injustice.  Accordingly, the Court will dismiss the counts of veil piercing with prejudice.  The Court

will not allow leave to amend because the fraudulent conduct alleged is covered by the underlying claims of the complaint.

### Fraudulent Transfer (Count eleven)

Sovereign alleges that Acorn's transfer of nearly $13 million in valuable assets to Livingston constituted a fraudulent transfer in violation of Connecticut General Statutes §§ 52-552e(a)(1) (with intent to hinder delay or defraud Sovereign) and 52-552f(b) (to an insider for an antecedent debt).   In its opposition brief, plaintiff appears to advance its claim of fraudulent transfer pursuant to only section 52-552f(b).

Section 52-552f(b) provides, in relevant part:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Defendants argue that the court lacks subject matter jurisdiction over the fraudulent transfer claims because the plaintiff lacks standing. The Supreme Court has held that a plaintiff must meet three requirements in order to establish Article III standing:  injury in fact, causation and redressability.  Vermont Agency of Natural Resources v. United States, 529 U.S. 765 (2000).  In the context of fraudulent transfer claims, a plaintiff must suffer prejudice or injury as a result of the conveyance at issue, and the remedy is limited to reaching the property that would have been available to satisfy the judgment had there been no conveyance.  Chemtex, LLC v. St. Anthony Enterprises, Inc., 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007).

Defendants maintain that plaintiff must plead and then demonstrate that it had an equity stake in the debtor's assets or that some portion of the debtor's assets would

have been available to satisfy the unsecured creditor's claims had there been no conveyance. Defendants argue that the notes transferred were encumbered by a valid lien favoring Livingston that exceeded the value of the notes. Thus, defendants assert that no assets existed to satisfy the amount claimed by plaintiff. Defendants posit that assets encumbered by a valid lien do not fall within the statutory definition of an asset pursuant to Connecticut General Statutes § 52-552b(2)(A).[3] Defendants claim further that plaintiff cannot challenge the transfer as fraudulent because it was subject to a valid subordination clause in the Guaranty.

The Court is permitted to consider material outside of the complaint in considering a motion to dismiss for lack of subject matter jurisdiction. <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). In this instance, consideration of subject matter jurisdiction implicates the validity of the lien and also the subordination clause. Plaintiff maintains that its complaint contests such validity. Because the Court does not now have the materials before it to assess such validity, the Court must defer consideration of these issues to the summary judgment stage. However, prior to that stage, plaintiff may want to consider the controlling law to determine whether it should continue to press its fraudulent transfer claim. The motion to dismiss will be denied as to the CUFTA claim (count eleven).

CUTPA (Count twelve)

Defendants assert that the CUTPA claim must be dismissed because the allegations do not support a CUTPA violation.

---

[3]Section 52-552b(2)(A) defines an "asset" as "property of a debtor, but the term does not include . . . [p]roperty to the extent it is encumbered by a valid lien. . . ."

Connecticut General Statutes § 42-110b(a) provides, in relevant part:

No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree. Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).

Defendants assert that the complaint fails to allege any activities that are immoral, unethical, unscrupulous, or offensive to public policy. Defendants cite Namoury v. Tibbetts in support of their argument that this case represents a simple breach of contract without any overreaching negative detriment to public at large. 2005 WL 81615 (D. Conn.) However, Namoury involved a claim of legal malpractice involving the sale of a parcel of property. At issue in the instant case is the loss of more than $22 million in loans by a savings bank, and the viability of a savings bank necessarily affects the interests of the public at large. Further, in Namoury, the Court

held that no facts alleged suggested the existence of bad faith.  By contrast, as previously discussed, this action involves alleged misrepresentations to prevent plaintiff from taking certain actions to protect its interest in the collateral underlying the loans.  Accordingly, plaintiff has alleged a viable CUTPA claim that survives a motion to dismiss (count twelve).

## CONCLUSION

For the foregoing reasons, the motions to dismiss [docs. #103 &104] are GRANTED in part and DENIED in part.  The Court dismisses with prejudice the claims of negligence against Acorn and Quan (count four), and corporate veil piercing as to Acorn, Quan and Stewardship (counts eight, nine and ten).  The Court dismisses without prejudice with leave to replead the claims of negligent mispresentation and fraudulent nondisclosure (counts five and seven).

Plaintiff should file an amended complaint within fourteen days of this ruling's filing date.

_____
Warren W. Eginton
Senior U.S District Judge

Dated this \_\_\_th day of January 2010, at Bridgeport, Connecticut.